AB

FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

SEP - 7 2011

MICHAEL S. RICHIE
CLERK

No. F-2011-330

# IN THE COURT OF CRIMINAL APPEALS FOR THE STATE OF OKLAHOMA

RECEIVED

SEP 07 2011

ATTORNEY GENERAL

|  |  |  |
|---|---|---|
| THEODORIC BARNARD LAWTON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Appeal from the District |
| | ) | Court of Carter County |
| | ) | Case No. CF-2010-113 |
| THE STATE OF OKLAHOMA, | ) | |
| | ) | |
| Appellee. | ) | |

## BRIEF OF APPELLANT

Robert W. Jackson
Appellate Defense Counsel
Oklahoma Bar No. 014754

P.O. Box 926
Norman, OK 73070
(405) 801-2727

ATTORNEY FOR APPELLANT

BRIEF DUE    /CarCJ



11-6-11

(3)



EXHIBIT
2

# TABLE OF CONTENTS

PAGE

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

**STATEMENT OF THE FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

**PROPOSITION I** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

    THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY
    ON THE DEFENSE OF ALIBI.

**PROPOSITION II** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

    THE PROSECUTOR'S IMPROPER SECOND-STAGE COMMENTS
    REQUIRE MODIFICATION OF MR. LAWTON'S SENTENCE.

**PROPOSITION III** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

    MR. LAWTON FAILED TO RECEIVE THE EFFECTIVE ASSISTANCE
    OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT.

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

# TABLE OF AUTHORITIES
## CASE AUTHORITIES

### FEDERAL CASES

**Capps v. Sullivan**, 921 F.2d 260 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . 16

**Early v. Packer**, 537 U.S. 3, 123 S.Ct. 362,
        154 L.Ed.2d 263 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Everett v. Beard**, 290 F.3d 500 (3rd Cir. 2002) . . . . . . . . . . . . . . . . . 16

**Osagiede v. United States**, 543 F.3d 399 (7th Cir. 2008) . . . . . . . . . . . . 16

i

**Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052,
80 L.Ed.2d 674 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**U.S. ex rel. Peery v. Sielaff**, 615 F.2d 402 (7th Cir. 1979) . . . . . . . . . . . 10

**United States v. Carter**, 433 F.2d 874 (10th Cir. 1970) . . . . . . . . . . . . . 11

**United States v. Orange**, 447 F.3d 792 (10th Cir. 2006) . . . . . . . . . . . . . 15

### STATE CASES

**Ashinsky v. State**, 1989 OK CR 59, 780 P.2d 201 . . . . . . . . . . . . . . . . . 11

**Broaddrick v. State**, 1985 OK CR 108, 706 P.2d 534 . . . . . . . . . . . . . . . 9

**Cherbonnier v. State**, 1988 OK CR 55, 751 P.2d 1098 . . . . . . . . . . . . . . 9

**Florez v. State**, 2010 OK CR 21, 239 P.3d 156 . . . . . . . . . . . . . . . . 12, 17

**Holt v. State**, 1955 OK CR 2, 278 P.2d 855 . . . . . . . . . . . . . . . . . . . . 10

**Honeycutt v. State**, 1992 OK CR 36, 834 P.2d 993 . . . . . . . . . . . . . . . . 8

**Hooker v. State**, 1994 OK CR 75, 887 P.2d 1351 . . . . . . . . . . . . . . . . . 10

**McIntosh v. State**, 2010 OK CR 17, 237 P.3d 800 . . . . . . . . . . . . . . . . . 12

**Millwood v. State**, 1986 OK CR 106, 721 P.2d 1322 . . . . . . . . . . . . . . . 8

**Nance v. State**, 1992 OK CR 54, 838 P.2d 513 . . . . . . . . . . . . . . . . . . . 9

**Phillips v. State**, 1999 OK CR 38, 989 P.2d 1017 . . . . . . . . . . . . . . . . . 17

**Pierce v. State**, 1990 OK CR 7, 786 P.2d 1255 . . . . . . . . . . . . . . . . . . . 8

**Smith v. State**, 1971 OK CR 223, 485 P.2d 771 . . . . . . . . . . . . . . . . . . 10

**Trissell v. State**, 1987 OK CR 107, 737 P.2d 1228 . . . . . . . . . . . . . . . . 8

**West v. State**, 1990 OK CR 61, 798 P.2d 1083 . . . . . . . . . . . . . . . . . . . 10

**Wilkey v. State**, 1998 OK CR 11, 953 P.2d 347 . . . . . . . . . . . . . . . . . . . 8

# CONSTITUTIONAL AUTHORITIES

**United States Constitution**

U.S. Const. amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15, 16

U.S. Const. amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# STATUTORY AUTHORITIES

**Oklahoma Statutes**

12 O.S.Supp.2002, § 2202 . . . . . . . . . . . . . . . . . . . . . . . . . 13

21 O.S.Supp.2009, § 13.1(5) . . . . . . . . . . . . . . . . . . . . . . . . 12

21 O.S.Supp.2007, § 652(A) . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 O.S.Supp.2009, § 1283 . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# OTHER AUTHORITIES

**Oklahoma Uniform Jury Instructions**

Instruction No. 8-57, OUJI-CR (2d) . . . . . . . . . . . . . . . . . . . . 8, 16

# IN THE COURT OF CRIMINAL APPEALS FOR THE STATE OF OKLAHOMA

THEODORIC BARNARD LAWTON,    )
                                         )
              Appellant,      )
                                         )
v.                               )     Case No. F-2011-330
                                         )
THE STATE OF OKLAHOMA,       )
                                         )
              Appellee.     )

## BRIEF OF APPELLANT

Theodoric Barnard Lawton, submits this, his Appellant's brief, appealing his conviction and sentence from Carter County District Court Case No. CF-2010-113.

Mr. Lawton was the defendant in the district court and will be referred to by name or as the Appellant. Appellee will be referred to as the state or prosecution. Numbers in parentheses refer to page citations in the original record (O.R.), the transcript of the jury trial (Tr.), the partial transcript of the jury trial (P Tr.) and the transcript of the sentencing proceeding (S Tr.).

## STATEMENT OF THE CASE

On February 22, 2010, the state filed an information charging Mr. Lawton with Shooting With Intent to Kill (21 O.S.Supp.2007, § 652(A)) (Count I) and Unlawful Possession of a Firearm (21 O.S.Supp.2009, § 1283) (Count II). (O.R. 1) The state also filed a "second page," alleging that Mr. Lawton had a prior felony

1

conviction. (O.R. 2) Mr. Lawton waived his right to a preliminary hearing and was bound over on these charges, after former conviction of a felony, on June 3, 2010. (O.R. 17)

On January 31 and February 3, 2011, Mr. Lawton was tried by jury before the Honorable Lee Card, Associate District Judge. The state was represented by Mr. Craig Ladd. Mr. Lawton was represented by retained counsel, Mr. Jason May. Mr. Lawton's trial was bifurcated. At the conclusion of the trial's first stage, the jury found him guilty of Count I. (Tr. 243; O.R. 90) Following the penalty phase of the trial, during which Mr. Lawton stipulated to the prior conviction, the jury returned with a verdict of guilty on Count II. (Tr. 245, 253; O.R. 89) It also recommended that Mr. Lawton be incarcerated for forty years on Count I and to five years on Count II. (Tr. 252-53; O.R. 88-89) On April 25, 2011, Mr. Lawton was formally sentenced to forty years imprisonment on Count I. (S Tr. 36) The court vacated the conviction for Count II on double jeopardy grounds. (S Tr. 35)

## STATEMENT OF FACTS

This case concerns the shooting of Baeyan Brown during the early-morning hours of February 21, 2010, in Ardmore, Oklahoma. The jury heard testimony indicating that it was commonplace for people to congregate on East Main Street, near a club called Paradox, after Ardmore's various bars closed at 2 a.m. (P Tr. 5, 20; Tr. 165)

2

Brown testified that he and Prince Nash, Jr. were sitting in Brown's Cadillac near the intersection of D street and East Main Street around 2:15 a.m. (Tr. 76) See State's Ex. 56. As Brown and Nash talked with friends Roy Roberts and Jerome Shannon, they were approached by a African American man wearing a hooded sweatshirt or "hoodie." (Tr. 77, 79) As the man walked to the driver's door of the Cadillac where Brown was sitting, he either bumped or pushed Roberts. (Tr. 79; P Tr. 8, 17) Upon seeing the contact between the man and Roberts, Shannon, fearing that Roberts would retaliate, immediately began pushing Roberts across the street and away from the man and the Cadillac. (P Tr. 9, 17)

Shannon, despite the presence of the hood, identified the man as Mr. Lawton, someone he had known "for years." (P Tr. 18) Roberts could only describe the man as being 6' 1" or 6' 2" tall and weighing between 200 and 230 pounds. (P Tr. 11-12) Roberts could not identify Mr. Lawton as the man who pushed him, but both Roberts and Shannon testified that they heard gunshots soon after they left the area. (P Tr. 10, 19) Neither man actually saw the shooting occur. (P Tr. 13, 20)[1]

Brown testified that as the man approached his car, he heard him say to Roberts, "What you doing over talking to a snitch ass nigger for?" (Tr. 79) The man then pulled the hood of the sweatshirt back slightly and asked Brown, "Do

---

[1] Estimates from Brown and Roberts indicated that there were anywhere between ten and 30 people present in the immediate area when the shooting occurred. (Tr. 97; P Tr. 5) Of those, only Brown, Roberts and Shannon testified at the trial. The only person to identify Mr. Lawton as the shooter was Brown. (Tr. 80)

3

you remember me?" (Tr. 79)  Brown testified that he was then able to identify the man as Mr. Lawton. (Tr. 80)  According to Brown, he told the man, "Oh, yeah.  I do remember you," and the man replied, "It's your time." (Tr. 79)  Brown testified that as he and Nash sped away in the Cadillac, the man opened fire. (Tr. 79)

According to Julia Roberts, a crime-scene investigator of the Ardmore Police Department, the man fired eight rounds, striking the Cadillac four times. (Tr. 117-18)  Brown was struck one time in the back of the neck. (Tr. 81)  He also received a grazing-gunshot wound to the back. (Tr. 81)

Brown testified that he drove to the Ardmore Police Department because it was nearby and he did not think that he could make it to the hospital. (Tr. 82)  Ardmore police officer Keith Ingle testified that Brown told him that he had been shot by "Theo." (Tr. 135)  Shortly after Brown was taken to the hospital, an Ardmore police dispatcher received an anonymous tip stating that the shooter was in a white pickup located at an Ardmore convenience store. (Tr. 136, 141)  Officer Ingle arrested Mr. Lawton at that location, which was about a mile from the scene of the shooting. (Tr. 136-37)  At the time of his arrest, Mr. Lawton was wearing a black, hooded sweatshirt. (Tr. 138)  **See** State's Ex. 34.

Mr. Lawton was immediately taken to the Ardmore Police Department where he agreed to speak to Officer Ingle and Ardmore Police Detective Darren Culley. (Tr. 161)  **See** State's Ex. 53.  The interview was audio/video recorded and portions of the interview were played for the jury. (Tr. 169)  **See** State's Ex. 51;

4

Court's Ex. 1. Mr. Lawton also permitted an officer to search his person (his hands and face) for the presence of gunshot residue, which he was told during the interview would be present if he had recently fired a firearm. (Tr. 162) **See** State's Exs. 51, 54.

Mr. Lawton consistently denied any involvement in the shooting. He admitted to being in the general vicinity of the shooting, telling officers that he left Suzy's, an Ardmore bar, shortly before 2 a.m. and then walked east on East Main Street. (Tr. 164) **See** State's Ex. 51. Mr. Lawton stated that he was traveling on foot near an establishment called The Hut, several blocks from the shooting scene, when he heard gunshots. (Tr. 165-66) **See** State's Ex. 56. Mr. Lawton was detained at the conclusion of the interview. **See** State's Ex. 51.

The state's theory was that the shooting was payback for Brown's involvement in a criminal case against Mr. Lawton some 16 years earlier. Brown testified that in 1993 he was an informant for the Ardmore Police Department. (Tr. 87-89) In that capacity, Brown testified against Mr. Lawton at a 1994 preliminary hearing after the state charged Appellant with selling cocaine to him. (Tr. 87-89) **See** State's Exs. 8, 9. Although State's Ex. 9 reflects that the state's case against Mr. Lawton did not survive the preliminary hearing stage, Brown testified that he saw Mr. Lawton in Ardmore several days after the preliminary hearing and that Mr. Lawton told him, "You're going to get yours." (Tr. 90) This,

5

according to Brown, was the last time that he saw Mr. Lawton prior to February 21, 2010. (Tr. 90)[2]

Brown testified that he was involved in 67 cases as an informant in Carter County and that at least 20 people had gone to prison based on his testimony. (Tr. 92-93) He acknowledged that his work as an informant made him unpopular with some in the Ardmore community and that many people wanted to see him dead. (Tr. 95-96)

The evidence collected from Mr. Lawton's hands and face was sent to the Oklahoma State Bureau of Investigation (OSBI) for analysis. Muriel Correa, a criminalist in the OSBI's trace evidence unit, tested the evidence for the presence of gunshot residue. (Tr. 103) None was found. (Tr. 109) **See** Defendant's Ex. 3.

Mr. Lawton did not testify at his trial. However, the defense did call Shirley Brown and Shantell Robinson. Shirley Brown is Baeyan Brown's half-sister and she was also acquainted with Mr. Lawton. (Tr. 178-79, 184) Ms. Brown was also the driver of the white pickup from which Mr. Lawton was arrested. (Tr. 137) She testified that she saw Mr. Lawton coming out of Suzy's between 1:45 and 2 a.m. on February 21, 2010, and that they talked briefly and exchanged phone numbers. (Tr. 179) Sometime later, Mr. Lawton called Ms. Brown and she picked him up at the corner of White Street and Park Street. (Tr. 180) **See** Defendant's Ex. 1. Ms. Brown admitted that she was intoxicated that evening and she could

---

[2] Brown claimed that he saw Mr. Lawton at Suzy's several hours before the shooting. (Tr. 74) Brown did not know whether Mr. Lawton saw him. (Tr. 74, 95)

6

not recall what time Mr. Lawton called her or what time she picked him up. (Tr. 179, 185) She did testify, however, that Mr. Lawton was not acting strangely. (Tr. 182)

Shantell Robinson was also an acquaintance of Mr. Lawton. (Tr. 190-91) Robinson spent the evening of February 20, 2010, at the Paradox club. (Tr. 187) She testified that as she was entering her car shortly after 2 a.m., she heard gunshots. (Tr. 188) Immediately after hearing the shots, Robinson began driving east on East Main Street. (Tr. 188-89) Within 30 seconds of hearing the shots, Robinson saw Mr. Lawton walking near The Hut, at the intersection of F Street and Burton Street. (Tr. 189-90) **See** State's Ex. 56. Robinson stopped and spoke to Mr. Lawton briefly, and offered him a ride. (Tr. 190) Robinson testified that during this conversation, Mr. Lawton asked her, "Who up there shooting?" (Tr. 191) Robinson observed that Mr. Lawton "was laughing and clowning," he was not out of breath and did not appear to be nervous. (Tr. 191)

Additional facts will be addressed in the propositions of error that follow.

**PROPOSITION I**

**THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE DEFENSE OF ALIBI.**

**A.      Standard of Review.**

Defense counsel did not request an alibi instruction and Mr. Lawton's jury did not receive any instruction on alibi.[3]  (Tr. 217)  "A defendant who does not request a jury instruction is entitled to relief on appeal only if the failure of the trial court to so instruct deprived the defendant of a substantial right." **Wilkey v. State**, 1998 OK CR 11, 953 P.2d 347, 349 (citing **Millwood v. State**, 1986 OK CR 106, 721 P.2d 1322, 1325).  "Failure to give such an [alibi] instruction will only be considered [plain] error when the testimony establishes that the defendant could not have been at the scene of the crime when it was committed." **Honeycutt v. State**, 1992 OK CR 36, 834 P.2d 993, 999 (citing **Pierce v. State**, 1990 OK CR 7, 786 P.2d 1255, 1266, and **Trissell v. State**, 1987 OK CR 107, 737

---

[3]  OUJI-CR (2nd) 8-57 is entitled "DEFENSE OF ALIBI – REQUIREMENTS." The instruction provides:

> Evidence has been introduced in this case that the defendant was at another and different place at the time of the commission of the crime charged.  The law is that such a defense is proper and legitimate and you should consider all of the evidence bearing thereon, whether introduced by the State or the defendant, and if, after careful consideration of all of the evidence in this case, you have a reasonable doubt as to whether the defendant was present at the time and place where the crime was committed, if it was committed, then you must find the defendant not guilty.

P.2d 1228, 1229).  Mr. Lawton contends that the requisite evidentiary showing was made.

**B.     Argument and Authority.**

On January 28, 2011, defense counsel filed a "Disclosure of Additional Witness." (O.R. 65)  The document disclosed the proposed testimony of Shantell Robinson and for all intents and purposes it was Mr. Lawton's notice of an alibi defense.  It indicated that Robinson had heard the shots and shortly thereafter saw Mr. Lawton at a location far enough from the scene of the shooting that he could not have committed the crime.  (O.R. 65)

Robinson's testimony at trial was consistent with the disclosure.   In essence, Robinson testified that approximately 30 seconds after she heard the shots, she drove upon Mr. Lawton at the intersection of F Street and Burton Street, an area he could not have reached given the short time frame involved. (Tr. 189-90)

This Court has "long held that a criminal defendant must be afforded the opportunity to have the jury consider his theory of defense whether or not he requests instructions on that ground at trial if the evidence produced at trial supports the defense." **Nance v. State**, 1992 OK CR 54, 838 P.2d 513, 515 (citing **Cherbonnier v. State**, 1988 OK CR 55, 751 P.2d 1098, 1099, and **Broaddrick v. State**, 1985 OK CR 108, 706 P.2d 534, 536).  The absence of an instruction on the defendant's theory of defense results in "trial by judge, rather than trial by a

9

jury" which implicates both Sixth Amendment and due process concerns. **U.S. ex rel. Peery v. Sielaff**, 615 F.2d 402, 404 (7th Cir. 1979). **See Hooker v. State**, 1994 OK CR 75, 887 P.2d 1351, 1361 ("A trial court must instruct the jury on ... defendant's theory of the case [when it] is supported by any evidence in the record"); **Smith v. State**, 1971 OK CR 223, 485 P.2d 771, 774 (finding the defendant had a "fundamental right" to an alibi instruction).

This Court has also made clear that such instructions are to be given even where the evidence supporting the defense theory is disputed or has been discredited. **See West v. State**, 1990 OK CR 61, 798 P.2d 1083, 1085 (a defendant is entitled to instructions on his theory of defense when the defense is "tenable as a matter of law, or finds support in the evidence"); **Broaddrick v. State**, 706 P.2d at 536 ("*the jury must be advised of defendant's theory of defense where there is evidence to support it, even though such evidence is discredited.*") (quoting **Holt v. State**, 1955 OK CR 2, 278 P.2d 855, 857) (emphasis in **Broaddrick**).

The defense of alibi was Mr. Lawton's sole defense at trial. The "Defense of Alibi – Requirements" instruction would have informed the jury that a claim of alibi was a legitimate defense and, more importantly, that acquittal was mandatory if the jury entertained a reasonable doubt concerning Mr. Lawton's whereabouts at the time in question. Thus, the alibi instruction was vital to Appellant's right to a fair trial. No other instruction provided the jury with this

10

information. A proper instruction on the defense of alibi was also critical to the jury's understanding that the defendant was not required to establish the alibi beyond a reasonable doubt and that the ultimate burden of persuading the jury that the alibi was not true rested with the prosecution.

> This Court has firmly stated in numerous instances that the burden of proof is not shifted to the defendant in the defense of alibi.... All that is demanded of the defendant who presents an alibi defense is that he show a state of facts which creates a reasonable doubt of his presence at the time and place where the crime was committed.

**Ashinsky v. State**, 1989 OK CR 59, 780 P.2d 201, 205 (citations omitted). **See United States v. Carter**, 433 F.2d 874, 875 (10th Cir. 1970) ("The interposition of an alibi does not shift to the defendant the burden of persuasion of that defense"). In the absence of an alibi instruction, Mr. Lawton's jury may have reasonably believed that the alibi evidence was to be rejected unless the defendant proved the existence of the alibi beyond a reasonable doubt.

## C.   Conclusion.

Mr. Lawton contends that the trial court had a duty to provide his jury with the alibi instruction, even in the absence of a request from his counsel. The Court should further find that the absence of the alibi instruction violated Mr. Lawton's Fourteenth Amendment right to due process and, as it did in **Smith v. State**, 485 P.2d at 774, find that it constitutes plain error. Accordingly, Mr. Lawton's conviction should be reversed and remanded to the district court for a new trial.

**PROPOSITION II**

**THE PROSECUTOR'S IMPROPER SECOND-STAGE COMMENTS REQUIRE MODIFICATION OF MR. LAWTON'S SENTENCE.**

**A.    Standard of Review.**

The error asserted in this proposition was not objected to at trial. As such, appellate review is for plain error. Under plain error review, this Court will provide relief if it concludes that the error was not harmless or that the error constitutes a miscarriage of justice or a substantial violation of a constitutional or statutory right. **McIntosh v. State**, 2010 OK CR 17, 237 P.3d 800, 803.

**B.    Argument and Authority.**

Mr. Lawton's conviction for shooting with the intent to kill meant that he would be required to serve 85% of any sentence imposed before becoming eligible for parole consideration, pursuant to 21 O.S.Supp.2009, § 13.1(5). In **Florez v. State**, 2010 OK CR 21, 239 P.3d 156, this Court explained that Section 13.1

> neither requires that a defendant be paroled after serving 85% of his sentence, nor prohibits him from parole consideration. It is designed merely to ensure that defendants who are convicted of certain crimes will serve 85% of whatever sentence they receive before parole becomes an option. Any instruction or argument to the jury based on this statute must accurately reflect its limited mandate[.]

**Id.** at 157-58.

In **Florez**, this Court was critical of the following comments made by the prosecutor: "And you're also given an instruction that tells you he will only do 85 percent of what you give him. He's not going to do all of it. So you've got to take

12

that into consideration. He's only going to do 85 percent of it." **Id.** at 158. This Court found that this misstatement of law "grievously misled jurors into believing that Florez would, by statute, be released before serving the entirety of any term of years they imposed" and concluded that the argument "constitutes a substantial violation of Florez's constitutional and statutory right to have his jury correctly instructed regarding sentencing." **Id.**

Mr. Lawton's jury heard the same type of improper comments. During the state's final closing argument of the trial's penalty phase, the prosecutor told the jury: "Not all crimes are the same, and I would submit to you that in the – in the spectrum of criminal activity, this is certainly on the serious end. That's why it's an 85 percent crime. Give him 30 years; he'll do a little over 25." (Tr. 250)[4]

As it did in **Florez**, this Court should find that this comment "constitutes a substantial violation" of Mr. Lawton's "constitutional and statutory right to have his jury correctly instructed regarding sentencing." **Florez**, 239 P.3d at 158. In **Florez**, although the Court characterized the prosecutor's comments as "a serious error," it ultimately concluded that no relief was warranted. **Id.** at 157. It did so because Florez faced the possibility of a life sentence, and although the prosecutor asked the jury to return with a sentence of 16 years, the jury assessed a sentence of eight years. **Id.** at 159. Under these circumstances, the Court found that Florez was not prejudiced by the error. **Id.**

---

[4] This Court can take judicial notice of the fact that 85% of 30 is 25.5. **See** 12 O.S.Supp.2002, § 2202.

The Court recognized, however, that "[i]n another case this misstatement of law would require either reversal for re-sentencing or sentence modification." **Id.** Mr. Lawton contends that this is such a case.  Mr. Lawton faced a sentencing range of ten years to life.  (O.R. 95)  Unlike **Florez**, Mr. Lawton's jury returned with a sentence that was 30 years over the minimum and ten years over the number referenced by the prosecutor.  (O.R. 88)  Under these circumstances, this Court should refuse to find that the improper comment did not have its calculated effect.

## C.     Conclusion.

This Court should find that the prosecutor's comment with regard to the 85% Rule was improper.   The Court should further find that, under the circumstances of this case, the error prejudiced Mr. Lawton in that it artificially inflated the term of years imposed by the jury. Accordingly, Mr. Lawton's sentence should be modified.

14

## PROPOSITION III

## MR. LAWTON FAILED TO RECEIVE THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT.

### A.    Standard of Review.

Claims of ineffective assistance of counsel are evaluated under the two-prong test of **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  First, it must be determined whether counsel's performance was deficient, whether it was unreasonable under prevailing professional norms and could not be considered sound strategy.  Second, it must be determined whether counsel's deficient performance prejudiced the defense of the case.  **Id.** at 687, 104 S.Ct. at 2064.  Prejudice is shown if there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different.  A reasonable probability is one sufficient to undermine confidence in the trial's outcome.  **Id.** at 694, 104 S.Ct. at 2068.  These determinations are made using a *de novo* standard of review.  **See United States v. Orange**, 447 F.3d 792, 796 (10th Cir. 2006) ("A claim for ineffective assistance of counsel presents a mixed question of fact and law, which we review *de novo*.").

### B.    Argument and Authority.

Prior to trial, defense counsel put the state on notice that Mr. Lawton's defense would include alibi witness Shantell Robinson.  (O.R. 65)  Given this disclosure and in light of Robinson's trial testimony, Mr. Lawton contends that defense counsel's failure to request a jury instruction on the defense of alibi

15

rendered his representation constitutionally deficient. **See Capps v. Sullivan**, 921 F.2d 260, 262 (10th Cir. 1990) (finding the failure to request an entrapment instruction rendered counsel's performance constitutionally deficient).   As previously discussed in Proposition I, **see** supra at 8, the absence of an alibi instruction was prejudicial because a reasonable jury may have believed, albeit incorrectly, that it was Mr. Lawton's obligation to prove the defense beyond a reasonable doubt.   **See** OUJI-CR (2nd) 8-57, "DEFENSE OF ALIBI – REQUIREMENTS."

Additionally, Mr. Lawton contends that defense counsel's failure to object to the improper comments of the prosecutor, **see** Proposition II, supra at 12, constitutes deficient performance. "Counsel's duty to know the applicable law, at least when it matters to his client's defense, has been clearly established by **Strickland** and its progeny." **Osagiede v. United States**, 543 F.3d 399, 408 n.4 (7th Cir. 2008).   **See Everett v. Beard**, 290 F.3d 500, 509 (3rd Cir. 2002) ("Of course, the state of the law is central to an evaluation of counsel's performance at trial.  A reasonably competent attorney patently is required to know the state of the applicable law"), *abrogated on other grounds by* **Early v. Packer**, 537 U.S. 3, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).  In some circumstances, counsel's failure to object to inadmissible evidence or improper argument can result in representation falling below that tolerated by the Sixth Amendment. **See, e.g.,**

16

**Phillips v. State**, 1999 OK CR 38, 989 P.2d 1017, 1044 (acknowledging that "the failure to object may rise to the level of ineffective assistance of counsel").

Here, in light of **Florez v. State**, 2010 OK CR 21, 239 P.3d 156, 158, the prosecutor's comments were clearly improper and likely influenced the jury's sentencing calculus. **See** Proposition II, supra at 12-13.

### C.     Conclusion.

This Court should find that counsel's failure to request an instruction on alibi was both deficient and prejudicial. The same conclusions should be reached with respect to defense counsel's failure to object to the improper comments of the prosecutor. Accordingly, Mr. Lawton's conviction should be reversed and remanded for a new trial.

## CONCLUSION

For the foregoing reasons, Mr. Lawton's conviction should be reversed and his case remanded to the district court for a new trial. In the alternative, his sentence should be favorably modified.

Respectfully submitted,

THEODORIC BARNARD LAWTON

Robert W. Jackson
Oklahoma Bar No. 14754
General Appeals Division
Oklahoma Indigent Defense System
P.O. Box 926
Norman, Oklahoma 73070
(405) 801-2727
(405) 801-2758 (facsimile)
Counsel for Appellant

## CERTIFICATE OF SERVICE

This is to certify that on September 7th, 2011, a true and correct copy of the foregoing Brief of Appellant was mailed, via United States Postal Service, postage pre-paid, to Appellant at the address set out below, and a copy was served upon the Attorney General this date by leaving a copy with the Clerk of the Court of Criminal Appeals for submission to the Attorney General.

Theodoric Barnard Lawton
Carter County Jail
100 South Washington
Ardmore, OK 73401

Robert W. Jackson

18